Michele J. Beilke (State Bar No. 194098)
mbeilke@huntonAK.com
Julia Y. Trankiem (State Bar No. 228666)
jtrankiem@huntonAK.com
Rafael N. Tumanyan (State Bar No. 295402)
rtumanyan@huntonAK.com
HUNTON ANDREWS KURTH LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627
Telephone:   213.532.2000
Facsimile:   213.532.2020

*Attorney for Defendants*
ABBOTT LABORATORIES INC. dba
ABBOTT SALES, MARKETING
DISTRIBUTION CO and ABBOTT
LABORATORIES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| RONALD PINEDA,<br><br>                    Plaintiff,<br><br>          v.<br><br>ABBOTT LABORATORIES, INC. a corporation, DBA ABBOTT SALES, MARKETING DISTRIBUTION CO and ABBOTT NUTRITION; ABBOTT LABORATORIES, a corporation; ALEX MAZZENGA, and DOES 1 to 100, inclusive,<br><br>                    Defendants. | Case No. 2:18-cv-3395<br><br>[Removal from Los Angeles County Superior Court Case No. BC697204]<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332 AND 1441**<br><br>[Diversity]<br><br>[Filed Concurrently with Civil Cover Sheet, Corporate Disclosure Statement, Notice of Interested Parties, and Declarations of John Berry and Cindy Foster]<br><br>Complaint Filed: March 7, 2018 |

1    **TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT**

2    **OF CALIFORNIA, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3        **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

4    Defendants ABBOTT LABORATORIES INC. dba ABBOTT SALES, MARKETING

5    DISTRIBUTION CO.[1] and ABBOTT LABORATORIES (together, "Abbott") hereby

6    remove the action filed by Plaintiff RONALD PINEDA ("Plaintiff") in the Superior Court

7    of the State of California in and for the County of Los Angeles, Case No. BC697204, to the

8    United States District Court for the Central District of California – Western Division.

9                    **JURISDICTION AND VENUE**

10       1.      Abbott asserts that this is a civil action over which this Court has original

11    subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under 28 U.S.C.

12    § 1441 in that it is a civil action between citizens of different states and the amount in

13    controversy exceeds the sum of $75,000, exclusive of interest and costs.

14       2.      This Court is in the judicial district and division embracing the place where

15    the state court case was brought and is pending. Thus, this Court is the proper district court

16    to which this case should be removed.[2] 28 U.S.C. §§ 1441(a); 1446(a).

17                    **PROCEDURAL BACKGROUND**

18       3.      On March 7, 2018, Plaintiff Ronald Pineda filed an action against Abbott in

19    the Superior Court for the State of California, County of Los Angeles, as Case No.

20    BC697204, *Ronald Pineda v. Abbott Laboratories, Inc.,* a corporation, *DBA Abbott Sales,*

21    *Marketing Distribution Co and Abbott Nutrition; Abbott Laboratories,* a corporation; *Alex*

22    *Mazzenga; and Does 1 to 100, inclusive* (the "State Court Action").

23

24

---

25   [1] Plaintiff erroneously listed Abbott Nutrition as a dba of Abbott Laboratories Inc. In reality, Abbott Nutrition is a subdivision of Abbott Laboratories; it is not a separate

26   entity.
[2] Abbott's position is that the proper division is the Southern Division, given that Plaintiff is a resident of Orange County and, during the relevant time period, Plaintiff

27   was employed in Orange County. Transfer to the Southern Division will serve the convenience of witnesses and parties and is in the interest of justice. Abbott intends

28   on filing a Motion for Intra-District Transfer.

4.      On March 22, 2018, Plaintiff served the registered agent for service of process of Abbott with copies of the Summons and Complaint.  True and correct copies of these documents, including the service transmittal pages for Abbott, are attached to this Notice as **Exhibit A**.  Exhibit A constitutes all process, pleadings and orders served on Abbott in the State Court Action.

5.      On April 20, 2018, Abbott filed and served an Answer to the Complaint in State Court.  A true and correct copy of Abbott's Answer is attached to this Notice as **Exhibit B**.

6.      Plaintiff served Individual Defendant Alex Mazzenga ("Mazzenga") with a Summons and Complaint on April 20, 2018.

7.      Pursuant to 28 U.S.C. § 1446(b), this removal is timely because Abbott filed this removal within 30 days of its first receipt of a copy of the Summons and Complaint in the State Court Action.

## COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

8.      The parties are completely diverse in this matter because Plaintiff is a citizen of California and Abbott is exclusively a citizen of Illinois for purposes of removal.

9.      **Plaintiff's Citizenship**.  For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

10.     As set forth in the Complaint, Plaintiff "is, and at times mentioned in this Complaint was, a resident of the County of Orange, California."  Complaint, at ¶ 1. As such, Plaintiff is domiciled in, and for purposes of diversity jurisdiction is a citizen of, the State of California (and, more specifically, Orange County).

11.     **Abbott's Citizenship**.  Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

– 2 –

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

12.     A corporation's principal place of business is determined under the "nerve center" test.  *See Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010).  Under this test, the principal place of business is the state where "a corporation's officers direct, control, and coordinate the corporation's activities."  *Id.*  A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters."  *Id.* at 93.  Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, and where day-to-day control over the company is executed.  *See, e.g., Tomblin v. XLNT Veterinary Care, Inc.,* 2010 WL 2757311, at *4 (S.D. Cal. 2010).

13.     Abbott is now, and was at the time this action was commenced, a citizen of the States of Illinois and Delaware within the meaning of 28 U.S.C. § 1332.

14.     Abbott Laboratories Inc. is a wholly-owned subsidiary of Abbott Laboratories.  Berry Decl. ¶ 3.

15.     Abbott Sales, Marketing, and Distribution Company is a trade name used by Abbott Laboratories Inc. for its sales, marketing, and distribution activities.  Abbott Nutrition is a division of Abbott Laboratories.  It is not a separate entity.  Berry Decl. ¶¶ 5, 8.

16.     Abbott Laboratories Inc., including its trade names Sales, Marketing, and Distribution Company and Abbott Nutrition, is, and has been at all times since March 7, 2018, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of Illinois.  Berry Decl. ¶ 4.

17.     Abbott Laboratories is, and has been at all times since March 7, 2018, incorporated in the State of Illinois with its principal place of business in Illinois.   Berry Decl. ¶ 7.

18.     Accordingly, Abbott is a citizen of the States of Illinois and Delaware, and not a citizen of the State of California.

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

19.   **Alex Mazzenga's Citizenship.**  The individual defendant (and the only non-diverse defendant), Mazzenga, is not a proper party to this lawsuit.[3]  For purposes of diversity, his citizenship therefore should be disregarded.  A non-diverse party named in the state court action may be disregarded if the federal court determines that the party's joinder is a "sham" or "fraudulent" so that the plaintiff can state no cause of action against that party. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001); *see also McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, joinder of the resident defendant is fraudulent.").

20.   In determining whether a defendant is "fraudulently" joined, courts may properly consider the allegations in the Complaint as well as facts presented by the defendant in its notice of removal. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  Here, Plaintiff's only claims against Mazzenga are the First Cause of Action for harassment (based on disability/medical condition and age) under the California Fair Employment and Housing Act ("FEHA") and the Seventh Cause of Action for intentional infliction of emotional distress ("IIED").  The allegations of the Complaint and Plaintiff's DFEH charges confirm that no cause of action may properly be maintained against the individual defendant, Mazzenga.

(a)   **FEHA Disability and Age Harassment Claim**

21.   Government Code section 12960 provides in part, "Any person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint in writing that shall state *the name and address of the person, employer, labor organization, or employment agency* alleged to have committed the unlawful practice complained of, and that shall set forth the particulars thereof and contain other information as may be required by the department." (italics added).  When the Department has determined that no investigation shall be undertaken, or that it will not issue an accusation

---

[3] Mazzenga joins in the removal of this lawsuit and intends on filing a motion to dismiss the claims against him.

against the alleged violator, it "shall promptly notify, in writing, the person claiming to be aggrieved that the department shall issue, on his or her request, the right-to-sue notice. This notice shall indicate that the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization, or employment agency *named* in the verified complaint within one year from the date of that notice."  Gov. Code, § 12965, subd. (b) (italics added).

22.     "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [Department] and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA.…The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA. [Citations.]"  *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.

23.     Plaintiff never listed Mazzenga in the administrative charges that he filed with the California Department of Fair Employment and Housing as an "employer" or "person" against whom the claim was made, nor did he name Mazzenga in the body of the complaint form as one of the alleged perpetrators.  As such, as a matter of law, Plaintiff cannot pursue a disability or age harassment claim against Mazzenga.

24.     Nor can Plaintiff file a new DFEH charge to allege a harassment claim against Mazzenga.  Under the FEHA, a plaintiff must file a timely and sufficient administrative complaint with the DFEH within one year after the unlawful practice occurred.  Cal. Gov't Code § 12960(d).  Here, Plaintiff's last day of employment with Abbott was February 23, 2017.  Foster Decl. ¶ 3.  As such, any filing of a DFEH charge against Mazzenga is now untimely.

**(b)     Intentional Infliction of Emotional Distress Claim**

25.     In the Complaint, Plaintiff alleges that, with respect to Mazzenga: (1) in 2016, Abbott, at Mazzenga's direction, "deprived [Plaintiff] of his 'spif' bonus for converting Greater El Monte Hospital in El Monte (located in LA county), which was to be given to a new employee, believed to be under the age of 40, who was not even employed

by Abbott when this process was initiated" (Compl. ¶ 12); (2) Mazzenga "systematically wr[o]te up and harass[ed ] his cohort of older employees" (notably, Mazzenga did not supervise Plaintiff) (Compl. ¶ 18(c)); and (3) per Plaintiff's "belief," Mazzenga allegedly provided information to Plaintiff's supervisor Yvonne Tanner, on which she relied in presenting Plaintiff with a performance improvement plan.  Compl. ¶ 18(j).

26.    As an initial matter, the allegations regarding the spif bonus are time-barred. According to the DFEH complaint that Plaintiff filed, the event involving the spif bonus took place in January 2016 – two years before the filing of the Complaint.  Cal. Code of Civ. Proc. § 335.1.

27.    Plaintiff's IIED claim fails for other reasons as well.  To establish a cause of action for IIED, Plaintiff must prove: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) [that she] suffer[ed] severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct . . . ." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).

28.    Plaintiff's claim for IIED is barred by the managerial privilege doctrine because Mazzenga was acting within the scope of his employment when the alleged conduct occurred, according to the Complaint. Complaint at ¶ 4. California law explicitly prohibits employees from suing their managers and supervisors for merely discharging their employment duties related to personnel actions. *See Sheppard v. Freeman*, 67 Cal.App.4th 339, 342 (1998); *Reno*, 18 Cal.4th 640; *Jones*, 42 Cal.4th 1158. An individual defendant also cannot be held liable for those same personnel decisions under a common law tort theory.  *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 80 (1996); *Phillips v. Gemini Moving Specialists*, 63 Cal.App.4th 563, 576 (1998) (no common law tort claim could be stated against individual defendant when a tort has its basis in the employer-employee relationship and the defendant is not plaintiff's employer). All of the actions that Mazzenga allegedly took against Plaintiff, as alleged in the Complaint, are personnel

decisions, as all of Plaintiff's claims arise out of calculation of his discipline or his termination.

29.     Moreover, Plaintiff cannot establish that any action on the part of Mazzenga was sufficiently "extreme and outrageous" to warrant liability for IIED. "Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society." *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55, 80. Additionally, discipline or termination of employment, without more, cannot give rise to liability for intentional infliction of emotional distress. *Buscemi v. McDonnell Douglas Corp.* (9th Cir. 1984) 736 F.2d 1348, 1352.  Based on California case law and the allegations in the Complaint, Plaintiff cannot state a cause of action for IIED against Mazzenga.

30.     Plaintiff's claim for IIED against Mazzenga is also preempted by the California Workers' Compensation Act. The California Workers' Compensation Act as codified in Labor Code section 3200 *et. seq.* provides a detailed and comprehensive system of remedies for work related injuries that are the "sole and exclusive remedy" for such injuries and are available only in proceedings before the Workers' Compensation Appeals Board. *See* Lab. Code §§3602(a), 5300. Subject to only limited exceptions, none of which are relevant here, workers' compensation is the only remedy available to injured employees against the employer responsible for injuries "arising out of and in the course of employment." Lab. Code §§3600-3602, 5300; *Shoemaker v. Myers,* 52 Cal.3d. 1, 18 (1990). Workers' compensation is generally the exclusive remedy for disabling injuries, whether physical or mental, arising from employment or termination of employment. See *Shoemaker*, 52 Cal.3d. at 16. This includes all injuries, whether physical or mental, that are collateral to or derivative of an injury compensable under the California Workers' Compensation Act. *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal. 4th 800, 814-815 (2001).

31.     The California Supreme Court has held that claims for IIED related to an employee's discipline or termination, are barred by the exclusive remedy provisions of the

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1  Workers' Compensation Act. *Miklosy v. The Regents of the Univ. of Cal.*, 44 Cal.4th 876,

2  902-03 (2008) (Workers' Compensation Act preempted plaintiff employees' claims for

3  IIED allegedly suffered as a result of employer's whistleblower retaliation); *Charles J.*

4  *Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, 24 Cal.4th 800, 814-815 (2001) (emotional

5  distress allegedly caused by employer's abusive conduct during termination process held

6  "collateral to or derivative of a compensable workplace injury"); *Cole v. Fair Oaks Fire*

7  *Protection Dist.*, 43 Cal.3d 148, 160 (1987) (claims are barred by the Workers'

8  Compensation Act "when the misconduct attributed to the employer is actions which are a

9  normal part of the employment relationship, such as demotions, promotions, criticism of

10  work practices").  An employee cannot "avoid the exclusive remedy provisions of the

11  Labor Code by characterizing the employer's decisions as manifestly unfair, outrageous,

12  harassment, or intended to cause emotional disturbance." *Cole*, 43 Cal. 3d at 160.

13      32.      Here, Plaintiff's IIED claim is preempted because the alleged misconduct

14  upon which he apparently bases his claim are all part of his employment relationship with

15  Abbott – and certainly not related to any relationship with, or conduct by, Mazzenga that

16  was outside the course and scope of his managerial duties. Indeed, to allege that Mazzenga

17  was acting outside the scope of his managerial duties would contradict Plaintiff's statement

18  that Mazzenga's conduct was "within the course and scope of such agency and

19  employment."  Complaint at ¶ 4.

20      33.      In summary, because the only causes of action asserted against Mazzenga are

21  for disability and age harassment and IIED, and because Plaintiff has failed to state a claim

22  against Mazzenga for any of these causes of action, Mazzenga is a "sham defendant"

23  whose citizenship must be disregarded for purposes of diversity jurisdiction.

24      34.      **Doe Defendants**.  Although Plaintiff has also named as defendants Does 1

25  through 100, "[f]or purposes of removal under this chapter, the citizenship of defendants

26  sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a); *see also Fristos v.*

27  *Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not

28

1 required to join in a removal petition).  Thus, the existence of "Doe" defendants does not

2 deprive the Court of jurisdiction.

3     35.    In conclusion and as set forth above, complete diversity of citizenship exists

4 under 28 U.S.C. § 1332, and removal is proper in this case pursuant to 28 U.S.C. § 1441.

5                          <u>**AMOUNT IN CONTROVERSY**</u>

6     36.    The Complaint alleges claims for: (1) discrimination, harassment, and

7 retaliation based on disability/medical condition (actual, perceived, and/or history of

8 physical disability) and age under the FEHA; (2) failure to engage in the interactive

9 process; (3) failure to provide reasonable accommodation; (4) retaliation for taking leave

10 under the California Family Rights Act ("CFRA"); (5) failure to prevent discrimination,

11 harassment, and retaliation; (6) wrongful termination in violation of public policy; and (7)

12 IIED.  Plaintiff's prayer for relief includes "general and special damages," "exemplary

13 damages," and attorneys' fees.  *See* Compl. p.22, Prayer.

14     37.    Plaintiff's Complaint does not specify the amount that he seeks to recover

15 from Defendants in this action. Where removal is based on diversity of citizenship and the

16 initial pleading seeks a money judgment but does not demand a specific sum, "the notice of

17 removal may assert the amount in controversy," 28 U.S.C. 1446(c)(2), and a removing

18 defendant "need include only a plausible allegation that the amount in controversy exceeds

19 the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547,

20 554, 574 U.S. --- (2015).

21     38.    In measuring the amount in controversy, the Court must assume that the

22 allegations of the Complaint are true and that a jury will return a verdict in favor of the

23 plaintiff on all claims asserted in the Complaint. *Kenneth Rothschild Trust v. Morgan*

24 *Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is

25 the amount that is put "in controversy" by the Complaint, and not how much, if anything,

26 the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986

27 (S.D. Cal. 2005) (*citing Schere v. Equitable Life Assurance Soc'y of the United States*, 347

28 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages

– 9 –

1   is not what is considered in the removal analysis; rather, it is the amount put in controversy

2   by the plaintiff's complaint)). In determining the amount in controversy, the Court may

3   consider damages awards in similar cases. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980

4   (9th Cir. 2005).

5        39.   Although Abbott denies the validity and merit of all of Plaintiff's claims and

6   allegations and denies that Plaintiff is entitled to any relief, Plaintiff's claims establish an

7   amount "in controversy" in excess of the jurisdictional minimum of $75,000, exclusive of

8   interest and costs, as set forth below:

9        40.   **Lost Earnings**.  If Plaintiff prevails on his claims for discrimination,

10   retaliation, and/or wrongful termination, he potentially could recover the amount he would

11   have earned up through the date of trial, including any benefits or pay increases. *See*

12   Judicial Council of California, Civil Jury Instructions ("CACI") No. 2433 (2012); *Wise v.*

13   *S. Pac. Co.,* 1 Cal. 3d 600, 607 (1970).

14        41.   Based on Plaintiff's claims for lost earnings alone, it is more likely than not

15   that the amount in controversy exceeds $75,000, exclusive of interest and costs, as required

16   for diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiff alleges that as a

17   consequence of Abbott's conduct, "Plaintiff has suffered and will suffer harm, including

18   lost past and future income and employment benefits… and lost wages… as well as

19   interest on unpaid wages…" Compl. ¶ 22.  At the time of his separation from employment,

20   Plaintiff's annual salary was $134,772.55.  Foster Decl. ¶ 3.  Therefore, Plaintiff's accrued

21   lost wages to date, based on Plaintiff's gross earnings for the period from his termination

22   on February 23, 2017 (Foster Decl. ¶ 3) to the date of this removal (approximately 60

23   weeks) is **$155,506.79**.  This is a conservative estimate, as lost wages will continue to

24   accrue through the date of trial.  In any event, Plaintiff's claim for lost earnings alone is

25   already well above the $75,000.00 threshold.

26        42.   **Emotional Distress Damages**.  Plaintiff also alleges that he has suffered

27   "humiliation, emotional distress, and mental and physical pain and anguish" and seeks

28   damages related to same. *See, e.g.,* Compl. ¶ 73.  Plaintiff's potential recovery of such

– 10 –

1  damages further augments the foregoing amount and demonstrates that the jurisdictional

2  prerequisite for removal of this action is met. *See Gibson v. Chrysler Corp.*, 261 F.3d 927,

3  945 (9th Cir. 2001) (holding that emotional distress damages are included in determining

4  amount in controversy).

5        43.    In *Kroske*, the Ninth Circuit found that the district court's conclusion that the

6  plaintiff's "emotional distress damages would add at least an additional $25,000 to her

7  claim" was not clearly erroneous, where she had only $55,000 in lost wages, thus

8  satisfying the amount in controversy requirement "even without including a potential

9  award of attorney's fees." 432 F.3d at 980. Based on the conservative estimate from

10  *Kroske*, Plaintiff's potential recovery of emotional distress damages could add at least

11  $25,000 to the amount in controversy.

12        44.    **Punitive (Exemplary) Damages**.  Plaintiff also seeks an award of punitive

13  damages.  *See*, *e.g.*, Compl. ¶ 74.  "In determining the amount in controversy, the court

14  must consider the amount of actual and punitive damages."  *Nasiri v. Allstate Indem. Co.*,

15  41 Fed. Appx. 76, 77 (9th Cir. 2002); *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 945

16  (9th Cir. 2001) (stating that "[i]t is well established that punitive damages are part of the

17  amount in controversy in a civil action.").   In California employment discrimination cases,

18  punitive damages in verdicts for the plaintiff often exceed the amount in controversy

19  threshold by themselves.  *See*, *e.g.*, *Sawyer*, 2015 WL 3929695, at *2 (C.D. Cal. 2015)

20  (denying remand because Plaintiff cited California "employment discrimination cases

21  where plaintiffs were awarded from $50,000 to $7.5 million in punitive damages.").  A

22  single-digit ratio (i.e., no more than nine-to-one) is typically appropriate for an award of

23  punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).

24        45.    Jury verdicts in California cases involving factual allegations similar to those

25  here demonstrate that were Plaintiff to prove the allegations of the Complaint and prevail at

26  trial, his punitive damages could bring the amount in controversy to well over the $75,000

27  threshold.

28

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

46.   **Attorneys' Fees**.  Plaintiff also seeks attorneys' fees which may be awarded under the FEHA.  *See* Cal. Gov't Code § 1295(b).  "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998).

47.   Plaintiff's Complaint alleges multiple violations of the Fair Employment and Housing Act, which authorizes an award of reasonable attorneys' fees to a prevailing plaintiff. Cal. Gov. Code §12965(b). While Plaintiff's attorneys' fees cannot be precisely calculated, it is reasonable to assume that they could exceed a damages award. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002) (noting that "attorneys' fees in individual discrimination cases often exceed the damages").

48.   Any estimate of attorney's fees includes fees over the life of the case, not just the fees incurred at the time of removal.  *Id.* "Recent estimates for the number of hours expended through trial for employment cases in [the Central District of California] have ranged from 100 to 300 hours. Therefore, 100 hours is an appropriate and conservative estimate. Accordingly, attorneys' fees in [an employment discrimination case alleging wrongful termination] may reasonably be expected to equal at least $30,000 (100 hours x $300 per hour)." *Sasso v. Noble Utah Long Beach, LLC*, Case No. CV 14-09154-AB (AJWx), 2015 U.S. Dist. LEXIS 25921, at *12 (C.D. Cal. 2015) (citations omitted). Thus, Plaintiff's demand for attorneys' fees adds at least $30,000 to the amount in controversy.

49.   **Total Amount in Controversy**.  Consequently, a preponderance of the evidence demonstrates that the amount in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff has put at least **$155,506.79** in controversy with her claims for lost wages alone.  Although no amount has been specified for Plaintiff's claims of emotional distress damages, punitive damages or attorneys' fees, any one of these claims, on its own, could exceed $75,000, exclusive of interest and costs, in a discrimination and wrongful termination lawsuit.  Plaintiff's claims collectively make it facially plain that Plaintiff is *seeking* far more than the minimum amount needed to meet the amount in

– 12 –

controversy requirement.  *See, e.g., Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (finding, by preponderance of the evidence, that a complaint exceeded $75,000 where it sought damages for lost wages, benefits, 401(k) contributions, value of life insurance policies, stock options, emotional distress damages, and attorney's fees and costs).

## NOTICE

As required by 28 U.S.C. § 1446(d), Abbott is providing written notice of the filing of this Notice of Removal to Plaintiff, and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California, in and for the County of Los Angeles.

**WHEREFORE**, Abbott hereby removes from Los Angeles County Superior Court Case No. BC697204 to the United States District Court for the Central District of California.

DATED:  April 23, 2018                    HUNTON ANDREWS KURTH LLP


By: */s/ Julia Y. Trankiem*
Julia Y. Trankiem
*Attorney for Defendants*
ABBOTT LABORATORIES INC. dba
ABBOTT SALES, MARKETING
DISTRIBUTION CO and ABBOTT
LABORATORIES