# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-03395-SVW-RAO | Date | July 18, 2018 |
|---|---|---|---|
| Title | *Ronald Pineda v. Abbott Laboratories, Inc., et al* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** MINUTE ORDER DENYING PLAINTIFF'S MOTION TO REMAND [14] AND GRANTING DEFENDANTS' MOTION TO DISMISS DEFENDANT MAZZENGA [11]

## I. Introduction

On May 21, 2018, Plaintiff Ronald Pineda filed a motion to remand this action to the Los Angeles Superior Court after Defendants Abbott Laboratories, Inc., Abbott Laboratories and Alex Mazzenga removed the action to federal court. Dkt. 14. This Court DENIES Plaintiff's motion to remand and GRANTS Defendant's Motion to Dismiss claims against Defendant Alex Mazzenga. Dkt. 11.

## II. Factual and Procedural Background

Plaintiff Ronald Pineda (Pineda) started working for Defendants Abbot Laboratories, Inc., in 1992. Dkt. 1 ¶ 15. At the time of filing, Pineda was 56 years old. *Id.* at ¶ 17. Defendant Alex Mazzenga was Pineda's district manager and supervisor. *Id.* at ¶ 2. Pineda's other supervisors were Arnold, Weiss and Tanner, who are not named as Defendants. *Id.* at ¶ 18(e). In December 2014, after 21 years of positive performance reviews, Pineda's then-manager Arnold presented him with a "partially achieved" performance review. *Id.* at ¶ 18. Other employees viewed Pineda's work positively, ranking him first among his Regional Account Manager peers in a negotiation workshop in March 2015, and second in objective sales measures among his peers in April 2015. *Id.* at ¶ 18. Pineda claims that he witnessed his superiors, including Mazzenga, systematically write up and harass a cohort of older employees. *Id.* at ¶ 18(c). Pineda claims that there was a pattern of giving employees negative performance reviews as they

_____ : _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-03395-SVW-RAO | Date | July 18, 2018 |
|---|---|---|---|
| Title | *Ronald Pineda v. Abbott Laboratories, Inc., et al* | | |

approach 50 until the employee either quit or was terminated. *Id.* Arnold told Pineda that younger employees have a "long runway" at Abbott, while in contrast older ones have a "short runway." *Id*. at ¶ 18(e). Tanner continued issuing Pineda's negative performance reviews in August 2015. *Id.* at ¶ 18(f).

In February 2016, Pineda sustained severe injuries in a car accident. *Id.* at ¶ 18(h). After the accident, Pineda experienced a variety of medical issues, including anxiety, decreased cognitive skill, balance problems, sleep disturbances and interrupted speech patterns. *Id.* Pineda informed Defendants about his injuries. *Id.* at ¶ 18(i). Just days after the accident, Tanner issued a Performance Improvement Plan (PIP) that harped on Pineda's non-verbal expressions, despite the fact that Pineda informed her about his inability to control his non-verbal expressions had been impacted by the accident. *Id.* The PIP made no mention of Pineda's disability. *Id.* Pineda was on medical leave from February 2016 to August 2016. *Id.* at ¶ 18(h). Just five days after returning to work in August 2016, Tanner--utilizing information believed provided to him by Mazzenga and others--presented Pineda with another PIP. *Id.* at ¶ 18(j). In September 2016, Pineda fainted and was diagnosed with a brain hemorrhage and cracked skull. *Id.* at ¶ 18(k). This second medical event resulted in further cognitive deficits, including loss of memory, impaired comprehension of conversations, and verbal communication problems. *Id.* Pineda once again went on medical leave but on October 28, Defendants informed Pineda that his position could no longer be held open and that he was required to return to work on November 10. *Id.* Pineda submitted a doctors' note stating that he required four-hour work days through the end of the year but Tanner denied the request and demanded that Pineda immediately return to work for full eight-hour days. *Id.*

In 2016, Pineda also was deprived of his bonus, which was to be given to a new employee, believed to be under the age of 40, who was not even employed by Defendants when this process was initiated. *Id.* at ¶ 12. Mazzenga was allegedly directly responsible for this. *Id.* Pineda repeatedly complained about the discrimination and harassment he was experiencing and also disputed performance reviews. *Id.* at ¶ 18(m). Defendants allegedly did not conduct a substantive investigation into the complaints. *Id.* at ¶ 18(n). When Pineda returned to work, Tanner continued issuing him PIPs. *Id.* at ¶ 20(a). In February 2017, Defendants terminated Pineda's employment and replaced him with a 28-year old employee. *Id.* at ¶ 21. Pineda filed suit in California Superior Court against the Defendants. Dkt. 1. Plaintiff brought the following claims against all Defendants: violation of FEHA and intentional infliction of emotion distress. *Id.* Additionally, Pineda brought the following claims against Abbott Laboratories, Inc. and Abbott Laboratories: failure to engage in the interactive process in violation of FEHA, failure to provide reasonable accommodation in violation of FEHA, Failure to prevent discrimination, harassment, and retaliation in violation of FEHA, and wrongful termination of employment in violation of public policy. *Id.*

### III.   Legal Standard

Defendant removed this action pursuant to 28 U.S.C. § 1441(b), which permits removal based on

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-03395-SVW-RAO | Date | July 18, 2018 |
|---|---|---|---|
| Title | *Ronald Pineda v. Abbott Laboratories, Inc., et al* | | |

this Court's diversity jurisdiction, 28 U.S.C. § 1332. Generally, "[t]he presence of the nondiverse party automatically destroys original [subject matter] jurisdiction." *Wis. Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998). However, "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). Such fraudulently joined "sham defendants" are disregarded for purposes of determining subject matter jurisdiction, and the Court's exercise of diversity jurisdiction is therefore proper. *See McCabe*, 811 F.2d at 1339. But if the defendant is not fraudulently joined, the case must be remanded to state court pursuant to 28 U.S.C. § 1447(c). *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1048 (9th Cir. 2009).

In applying the fraudulent joinder rule, the applicable state law must be "settled" and the complaint's deficiency must be "obvious." *See McCabe*, 811 F.3d at 1339. These stringent standards reflect the "general presumption against fraudulent joinder" that complements the "strong presumption against removal jurisdiction." *Hunter*, 582 F.3d at 1046. Federal courts "strictly construe the removal statute against removal jurisdiction," such that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted); *see also Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).

In order to determine if a defendant is properly joined, the Court may consider extrinsic facts "showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339. While the court may consider facts outside the complaint, "a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Hunter*, 582 F.3d at 1044 (quoting *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004) (en banc)). "[T]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper," and "an inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* (quoting *Smallwood*, 385 F.3d at 573-74).

**IV.     Analysis**

Pineda brings two claims against Mazzenga: (1) harassment because of Pineda's age and disability in violation of FEHA and (2) intentional infliction of emotional distress.

                                                                                              :
                                                              _____
                                                          Initials of Preparer
                                                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:18-cv-03395-SVW-RAO | Date | July 18, 2018 |
| --- | --- | --- | --- |
| Title | *Ronald Pineda v. Abbott Laboratories, Inc., et al* | | |

A.  FEHA Harassment

Under FEHA, it is unlawful for "an employer"… or any other person," to harass an employee because of age, disability, or medical condition. Cal. Gov. Code § 12940(j)(1). Under FEHA, "harassment" includes: (a) [v]erbal harassment, e.g. epithets, derogatory comments or slurs on a basis enumerated in the Act; (b) physical harassment, e.g. assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act; [or] (c) visual forms of harassment, e.g. derogatory posters, cartoons, or drawings ..." Cal.Code Regs. 2 § 11019(b)(1).

As established in *Wexler v. Jensen Pharm., Inc.*, No. CV1503518ABAJWX, 2015 WL 6159101 (C.D. Cal. Oct. 20, 2015)[1], "California law distinguishes between discriminatory employment actions and harassment." *Wexler*, 2015 WL 6159101 at *5. "Only an employer—and not individuals—can be held liable for discriminatory employment actions, typically through a claim for employment discrimination. By contrast, an individual employee, in addition to an employer, can be held liable for harassment." *Id.* The court in *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55 (1996) explained this distinction:

> "[T]he Legislature intended that commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, performance evaluations, the provision of support, the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment. These are actions of a type necessary to carry out the duties of business and personnel management. These actions may retrospectively be found discriminatory if based on improper motives, but in that event the remedies provided by the FEHA are those for discrimination, not harassment. Harassment, by contrast, consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management. This significant distinction underlies the differential treatment of harassment and discrimination in the FEHA."

*Janken*, 46 Cal.App.4th at 64-65.

---

[1] *Wexler* is factually and procedurally almost identical to this case. Thus, this opinion draws closely on Judge Birotte's opinion in *Wexler*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-03395-SVW-RAO | Date | July 18, 2018 |
|---|---|---|---|
| Title | *Ronald Pineda v. Abbott Laboratories, Inc., et al* | | |

Commonly necessary personnel management actions such as hiring and firing, job or project assignments, promotions or demotions, and performance evaluations do not constitute a harassment claim under FEHA. *Lawler v. Montblanc North America, LLC*, 704 F.3d 1235, 1244(9th Cir. 2013). Here, Pineda alleges the following misconduct by Mazzenga: depriving Pineda of a deserved bonus, issuing undeserved negative performance evaluations, and providing information to Tanner who in turn issued Mazzenga a PIP. All of these actions are "commonly necessary personnel management actions" that may give rise to a claim against an employer for employment discrimination, but that do not give rise to a claim against an employee for harassment. *See Wexler*, 2015 WL 6159101 at *5 (holding that assigning and redistributing Plaintiff's work, reviewing Plaintiff's program requests, issuing Plaintiff a corrective action plan and PIP, expanding Plaintiff's job responsibilities and coaching and critiquing Plaintiff's performance through regular phone calls and ride-alongs are management actions and thus do not give rise to a claim against an employee for harassment); *See also Lawler*, 704 F.3d at 1245 (holding that during an inspection a supervisor questioning an employee's appearance and criticizing her work does not constitute harassment under FEHA).

Managers may be individually liable for harassment where their personnel and management decisions "have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 709. While the complaint alleges that "Pineda had witnessed his superiors including MAZZENGA, systematically write up and harass his cohort of older employees", the complaint fails to identify any of Mazzenga's actions beyond the ones listed above. Dkt. 1 ¶ 17(c). Mazzenga's three actions that Pineda alleges are harassment do not establish a widespread pattern of bias. Thus, Mazzenga's personnel and management decisions do not have a secondary effect of communicating a hostile message. As the Court in *Wexler* noted, "the law governing when management activity can give rise to a harassment claim makes clear that the management activity must be harassing in some way". *Wexler*, 2015 WL 6159101 at *6. Mazzenga's actions do not meet that standard. It seems that Pineda has brought his unviable harassment claim against Mazzenga, the only non-diverse supervisor, simply to secure state jurisdiction. "Threatening an individual with liability that should properly attach to his employer because it is based on employment-related activity subverts the logic of FEHA. Plaintiffs who engage in such tactics should not be rewarded with their preferred forum." *Id.*

For the foregoing reasons, this Court finds that Pineda has not alleged a harassment claim against Mazzenga under FEHA.

B. *Intentional Infliction of Emotional Distress*

To a establish a claim for intentional infliction of emotional distress, a plaintiff must show "'(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-03395-SVW-RAO | Date | July 18, 2018 |
|---|---|---|---|
| Title | *Ronald Pineda v. Abbott Laboratories, Inc., et al* | | |

the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' " *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (citations omitted). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' " *Id.* at 1050-51 (citations omitted). Just as management conduct does not constitute harassment, "a simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged." *Janken*, 46 Cal. App. 4th at 80. "If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *Id.*

Pineda's claim for intentional infliction of emotional distress against Mazzenga is based on the same conduct as his FEHA claim. As already discussed, Mazzenga's actions, as described in the complaint, are typical personnel and management actions and hence do not support a claim for IIED. Thus, this court finds that Plaintiff Pineda has not alleged an IIED claim against Mazzenga. *See Hobdy v. Los Angeles Unified School Dist.*, 386 Fed. Appx. 722, 725 (9th Cir. 2010) (holding that discrimination through performance evaluations is insufficient for an IIED claim).

## V. Conclusion

Defendants have met their heavy burden of proving that there is no possibility that Pineda could assert a FEHA harassment claim or IIED claim against Mazzenga. Mazzenga was fraudulently joined and there are no valid claims against Mazzenga. The remaining Defendants when evaluating diversity are: Abbott Laboratories, Inc., an Illinois and Delaware corporation, and Abbott Laboratories, an Illinois and Delaware corporation. As Pineda is a California resident, there is complete diversity of citizenship. Further, the amount in controversy requirement is satisfied. Thus, this Court has subject-matter jurisdiction over Plaintiff Pineda's action. Plaintiff's motion to remand is DENIED and Mazzenga is DISMISSED. The Court sets jury trial for November 27, 2018 at 9 A.M. and pre-trial conference for November 19, 2018 at 3 P.M.

: 

Initials of Preparer

PMC